IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


DEAN PATRICK DECKER, III
and LORETTA DECKER,

      Plaintiffs,

v.                                  Civil Action No. 5:15CV114
                                            (STAMP)
STATOIL USA ONSHORE
PROPERTIES, INC.,
a Delaware corporation
and PETROEDGE ENERGY, LLC,
a Delaware limited
liability company,

      Defendants,

and

EQT PRODUCTION COMPANY,

      Intervenor-Defendant.


**<u>MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DEFERRING IN PART
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
GRANTING DEFENDANT'S SUPPLEMENTAL
MOTION FOR PARTIAL SUMMARY JUDGMENT,
DEFERRING RULING ON PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
DEFERRING RULING ON INTERVENOR-DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**


     This is a commercial contract dispute arising out of a joint
venture for the acquisition, exploration, and development of oil
and gas leases.  The parties have filed cross-motions for partial
summary judgment.  For the following reasons, the defendant's
motion for partial summary judgment is granted in part and deferred
in part and the defendant's supplemental motion for partial summary

judgment is granted.  This Court defers ruling on the plaintiffs'
motion for partial summary judgment and the intervenor-defendant's
motion for partial summary judgment pending those parties'
settlement of Count Two.

## I.  <u>Facts</u>

The plaintiffs, Dean Patrick Decker and Loretta Decker ("the
Deckers"), claim entitlement to overriding royalty interests in oil
and gas leases held by defendant Statoil USA Onshore Properties,
Inc. ("Statoil") and intervenor-defendant EQT Production Company
("EQT").  The Deckers' claims arise out of a 2011 agreement between
Decker Energy, LLC ("Decker Energy") and PetroEdge Energy, LLC
("PetroEdge") called the "Participation Agreement."  ECF No. 143-3.
Dean Decker was the sole member of Decker Energy.  ECF No. 146-1 at
59 (providing a signature line for Decker Energy listing Dean
Decker as Decker Energy's "Sole Member").  At that time, Decker
Energy held oil and gas leases in Tyler County, West Virginia and
was investigating title to leases in properties in Tyler and Wetzel
Counties for later acquisition.  ECF Nos. 143-1 at 2; 145-1.
Through the Participation Agreement, Decker Energy and PetroEdge
sought to cooperate in the acquisition and development of these
leases.  ECF No. 145-1 at 2.

The Participation Agreement had three principal parts.  First,
Decker Energy agreed to sell to PetroEdge interests in a set of oil
and gas leases held by Decker Energy called the "Initial Leases,"

2

identified in Exhibit A-1 to the Participation Agreement. ECF No. 143-3 at 5, 10, 12, 14. For each Initial Lease, Decker Energy was to transfer 90% of its working interest[1] to PetroEdge while retaining 10% of its original working interest. Id. at 6. Further, Decker Energy would receive an overriding royalty interest[2] called the "Initial Lease ORRI." Id. at 10. If Decker Energy held more than an 83% working interest in an Initial Lease, Decker Energy was entitled to an overriding royalty interest in the amount of the percentage difference between the percentage of Decker Energy's working interest and 83%. Id. Thus, if Decker Energy held an 87% working interest in an Initial Lease, it would be entitled to an overriding royalty interest of 4% in that lease. See ECF No. 204-6 at 7. Decker Energy was also "entitled to assign the Initial Lease ORRI or cause the Initial Lease ORRI to be paid to [the Deckers]." ECF No. 143-3 at 23.

Second, Decker Energy and PetroEdge agreed that PetroEdge would investigate certain properties identified in Exhibit A-3 to the Participation Agreement, called the "Target Leases." Id. at

---

[1]A working interest in an oil and gas lease is "the right to work on the leased property to search, develop, and produce oil and gas, as well as the obligation to pay all costs." "Working Interest," Black's Law Dictionary (10th ed. 2014).

[2]An overriding royalty interest in an oil and gas lease is "[a] share of either production or revenue from production (free of the costs of production) carved out of a lessee's [working] interest under an oil-and-gas lease." "Royalty, Overriding Royalty," Black's Law Dictionary (10th ed. 2014).

33. PetroEdge could then acquire the Target Leases. _Id._ Upon acquiring a Target Lease, PetroEdge was to "assign to Decker [Energy] an undivided working interest in such Target Lease" and an overriding royalty interest in that lease. _Id._ As with the Initial Lease ORRI, Decker Energy was "entitled to assign such overriding royalty or cause such overriding royalty to be paid to [the Deckers]." _Id._

Third, Decker Energy and PetroEdge agreed to create an "Area of Mutual Interest" ("the AMI"), which included the Initial Leases, the Target Leases, and other adjacent properties. _Id._ at 6, 34. The parties agreed that if one of them sought to acquire a lease within the AMI, the other party would have a right of first refusal to acquire that lease on the same terms. _Id._ at 34-35. In effect, this prevented Decker Energy and PetroEdge from competing for leases within the AMI.

PetroEdge later pooled and unitized a set of leases, including one of the Initial Leases called "the Welch Lease,"[3] into a pooled unit known as "the Ball Unit." ECF Nos. 145-2, 146-5 at 4. PetroEdge then drilled a well on the Ball Unit known as "Ball Unit 1H" and began making royalty payments directly to the Deckers. ECF

---

[3]The Initial Leases included several leases in the name of Mary Maxine Welch. _See_ ECF No. 204-2 at 10-11. "The Welch Lease" referred to in this memorandum opinion and order is identified as "#120" in Exhibit A-1 to the Amendment to the Participation Agreement and it includes 69.5 net acres. ECF No. 204-2 at 10. Further, the lease is recorded at Book 371, Page 217 in Ellsworth District, Tyler County, West Virginia. _Id._

Nos. 145-2 at 2-3; 143-6 at 1. There is no evidence of a written assignment from Decker Energy to the Deckers or of a written invocation of Decker Energy's right to cause the payments to be directed to the Deckers. Rather, the parties informally understood that the royalties would be paid directly to the Deckers. ECF No. 204-6 at 9.

Decker Energy and PetroEdge then executed an "Amendment to the Participation Agreement" ("the Amendment"). ECF No. 146-2. Under the Amendment, Decker Energy was to receive a 1% overriding royalty interest in each Target Lease acquired by PetroEdge, which was to be conveyed directly to the Deckers rather than Decker Energy within ninety days of PetroEdge's acquisition of the lease. ECF No. 145-3 at 4. It also amended Exhibits A-1 and A-3 identifying the Initial Leases and the Target Leases respectively. See ECF No. 155-1 at 4, 9-16.

Statoil later acquired all of PetroEdge's West Virginia assets, including those under the Participation Agreement and the Amendment. ECF Nos. 146-3 at 18-22; 143-9. Under § 15.4 of the Participation Agreement, Decker Energy had the right to "tag along" with PetroEdge's sale to Statoil and sell its assets relating to the Participation Agreement to Statoil on the same terms as PetroEdge. ECF No. 143-3 at 40. Decker Energy exercised that right and conveyed all of its interests, including "any royalty interests," in leases identified at Exhibit A, Schedule 1 to the

parties' Purchase and Sale Agreement ("the PSA") along with Decker Energy's interests in the Participation Agreement and the Amendment. ECF Nos. 146-4 at 17-21, 66-68, 72; 143-10; 145-4. The Deckers maintain that, based on their communications with PetroEdge, Decker Energy conveyed all of its interests in the Initial Leases and Target Leases except for its overriding royalty interest and its working interest in Ball Unit 1H. ECF No. 143-10; 145-4. However, Exhibit A, Schedule 1 to the PSA lists the Welch Lease and Decker Energy's overriding royalty interest in that lease as one of the assets being purchased. ECF No. 204-4 at 66. Further, Exhibit A, Schedule 1 expressly excludes Decker Energy's 10% working interest in Ball Unit 1H. Id. at 68.

After these acquisitions, Statoil made royalty payments to the Deckers for production from Ball Unit 1H. ECF No. 145-5 at 2-3; 143-13. However, Statoil later notified the Deckers that they were no longer entitled to royalties because Decker Energy conveyed all of its interests in the Initial Leases and the Ball Unit to Statoil, and Statoil stopped making payments to the Deckers.[4] ECF No. 143-15. Statoil later assigned to the Deckers overriding royalty interests in eighteen leases that Statoil claims are acquired Target Leases. ECF No. 145-6. Then, after the Deckers

---

[4]It is unclear whether Statoil has made payments to Decker Energy for its 10% working interest in Ball Unit 1H. However, the Deckers have not made a claim regarding Decker Energy's working interest, and that issue is not before this Court.

filed this civil action, EQT acquired Statoil's interests in the Target Leases. This Court has, thus, allowed EQT to intervene in this civil action as a defendant.

The Deckers allege that PetroEdge and Statoil failed to pay royalties to the Deckers or to assign to them overriding royalty interests in the Initial Leases, Target Leases acquired by PetroEdge or Statoil, and the Ball Unit and Ball Unit 1H—Counts One, Two, and Three respectively. The Deckers also allege in Count Four a claim for unjust enrichment against Statoil. The Deckers seek a declaration that they hold or are entitled to hold overriding royalty interests in the Initial Leases, the acquired Target Leases, and the Ball Unit and Ball Unit 1H. They also seek an accounting of the development and production on each lease and the appointment of a special commissioner to execute and deliver assignments of interests in the leases to them. Further, the Deckers request a judgment for all unpaid royalties on the leases and for their unjust enrichment claim.

Statoil seeks summary judgment as to all counts and the Deckers and EQT each seek summary judgment as to Count Two. The parties have since indicated that the Deckers and EQT have settled Count Two regarding the Target Leases pending a period of due diligence to conclude on July 3, 2017. <u>See</u> ECF No. 205. This Court will defer ruling on all motions as to Count Two until that time. Thus, this Court considers only Statoil's motion for partial

summary judgment and supplemental motion for partial summary judgment as to Counts One, Three, and Four.

## II. Applicable Law

Under Federal Rule of Civil Procedure 56, this Court must grant a party's motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted against that party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex, 477 U.S. at 322-23. "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945

F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992).

However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). Moreover, "[t]he nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." <u>Othentec Ltd. v. Phelan</u>, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation marks omitted). The nonmoving party must produce "more than a 'scintilla'" of evidence "upon which a jury could properly proceed to find a verdict for the party producing it." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Anderson</u>, 477 U.S. at 251).

### III.  <u>Discussion</u>

The core issues are whether, under the Participation Agreement and the Amendment, the Deckers are entitled to overriding royalty interests in the Initial Leases or in the Ball Unit and whether Decker Energy assigned its royalty interests to the Deckers. In addition to its arguments on the merits, Statoil also argues that the Deckers lack standing under Article III of the Constitution to assert Counts One and Three. This Court must discuss the jurisdictional issue before proceeding to the merits.

A.  Standing

Article III of the United States Constitution limits federal courts' jurisdiction to actual "cases" and "controversies."  U.S. Const. art. III, § 2.  It is "an essential and unchanging part of the case-or-controversy requirement" that the party asserting federal jurisdiction establish standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To establish standing, a party must show: "(1) that it has suffered an injury in fact that is both concrete and particularized and 'actual or imminent, not conjectural or hypothetical'; (2) that there is a causal connection between the injury and the conduct complained of, i.e. the injury is 'fairly traceable' to the challenged action; and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'"  Star Sci. Inc. v. Beales, 278 F.3d 339, 358 (4th Cir. 2002) (quoting Lujan, 504 U.S. at 560-61).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  Lujan, 504 U.S. at 561.  At the summary judgment stage, the party asserting jurisdiction "must 'set forth' by affidavit or other evidence 'specific facts'" supporting standing, id. (quoting Fed. R. Civ. P. 56(e)), and "establish that there exists no genuine issue of material fact as to justiciability or the merits."  Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 329 (1999).

Statoil argues that the Deckers lack standing to seek a declaration that they are entitled to overriding royalties in the Initial Leases or the Ball Unit because they were not parties to the Participation Agreement or the Amendment and because Decker Energy never assigned its interests in those leases to the Deckers. The Deckers do not dispute that they were not personally parties to those agreements. Rather, the Deckers argue that Decker Energy effectively assigned its royalty interests in the Initial Leases to them by assigning royalty payments to the Deckers as evidenced by the parties' course of performance.

It is clear from the evidence submitted that the question of standing is equivalent to a determination on the merits. Essentially, Statoil argues that the Deckers lack standing because they have no interest in the Initial Leases or the Ball Unit. This is precisely the issue on which the Deckers seek a judicial determination. Thus, the issue of standing and the merits have effectively merged. This Court will therefore consider Statoil's motions on the merits as to Counts One, Three, and Four.[5]

B. Statoil's Motions for Partial Summary Judgment

The Deckers claim they are entitled to overriding royalty interests in the Initial Leases, including the Welch Lease, and in

---

[5]This Court notes that standing likely exists as to the Deckers' claimed interests in the Target Leases under Count Two. Thus, even if the Deckers lack standing to assert Counts One and Three, this Court still has subject matter jurisdiction in this civil action.

the Ball Unit because it includes the Welch Lease. Thus, the Deckers' claimed interest in the Ball Unit is dependent upon a finding that they are entitled to an interest in the Welch Lease, which in turn is dependent upon a finding that the Deckers are entitled to overriding royalty interests in the Initial Leases. Thus, this Court considers Counts One and Three concurrently.

    1.  <u>The Initial Leases and the Ball Unit</u>

Statoil argues that all of the Initial Leases either expired, were transferred to Statoil, or both. All but two of the Initial Leases, including the Welch Lease, expired in 2012, 2013, or 2014 but many have since been renewed or renegotiated by Statoil. ECF Nos. 204-7 at 8-9; 146-5 at 4; 204-8. While the Deckers argue that more than two of the Initial Leases were unexpired, the only evidence they offer to support this argument are the unsworn report and supplemental report of their retained expert, Robert Chase, Ph.D., P.E.

This Court may not consider those materials on summary judgment. <u>See</u> <u>Peak ex rel. Peak v. Cent. Tank Coatings, Inc.</u>, 606 F. App'x 891, 895 (10th Cir. 2015); <u>DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach</u>, 576 F.3d 820, 826 (8th Cir. 2009); <u>Pack v. Damon Corp.</u>, 434 F.3d 810, 815 (6th Cir. 2006); <u>Scott v. Edinburg</u>, 346 F.3d 752, 759 (7th Cir. 2003); <u>Provident Life & Accident Ins. Co. v. Goel</u>, 274 F.3d 984, 1000 (5th Cir. 2001); <u>Fowle v. C & C Cola, a Div. of ITT-Cont'l Banking Co.</u>, 868 F.2d 59, 67 (3d Cir.

1989); <u>Solis v. Prince George's Cnty</u>, 153 F. Supp. 2d 793, 798-99 (D. Md. 2001). The Deckers had an opportunity to present Dr. Chase's findings in the form of an affidavit or deposition testimony when responding to Statoil's original motion for partial summary judgment and its supplemental motion but failed to do so each time. Accordingly, this Court will not consider Dr. Chase's reports, and the Deckers fail to demonstrate a genuine dispute of material fact regarding the expiration of Initial Leases.

Further, most of the Initial Leases, including the Welch Lease and the other unexpired lease, were conveyed to Statoil by Decker Energy under the PSA. <u>Compare</u> ECF No. 146-4 at 66-68, <u>with</u> 146-2 at 9-12. The PSA lists the Welch Lease, including Decker Energy's royalty interest, in Exhibit A, Schedule 1 as an asset to be transferred to Statoil. ECF No. 146-4 at 66. Moreover, Exhibit A, Schedule 1 expressly excluded Decker Energy's 10% working interest in Ball Unit 1H, clearly indicating that Decker Energy did not intend to reserve its royalty interest in the Welch Lease. <u>See id.</u> at 68. Thus, all of Decker Energy's interests in unexpired Initial Leases were conveyed to Statoil except for its working interest in Ball Unit 1H.

Nevertheless, the Deckers argue that Decker Energy could not have conveyed the Welch Lease or the other unexpired Initial Lease to Statoil because the Deckers personally held those royalty interests and were not parties to the PSA. Statoil argues that

13

there is no contractual or evidentiary basis for the Deckers' claims.  Thus, this Court must determine whether the Initial Lease ORRI was to be transferred directly to the Deckers or was otherwise assigned to the Deckers.

a.  <u>Contractual Basis</u>

A "valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." <u>New v. GameStop, Inc.</u>, 753 S.E.2d 62, 72 (W. Va. 2013).  Where the terms of a contract are unambiguous, extrinsic evidence of the parties' statements or intent are irrelevant to contradict or change the terms of the agreement unless there is a showing of illegality, fraud, duress, mistake, or insufficiency of consideration. <u>Mountain State Coll. v. Holsinger</u>,742 S.E.2d 94, 101 (W. Va. 2013).

"Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." <u>State ex rel. Fazier & Oxley, L.C. v. Cummings</u>, 569 S.E.2d 796, 803-04 (W. Va. 2002) (internal quotation marks omitted).  "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." <u>Salem Int'l Univ., LLC v. Bates</u>, 793 S.E.2d 879, 885 (W. Va. 2016) (internal quotation marks omitted).

Flanagan v. Stalnaker, 607 S.E.2d 765, 769 (W. Va. 2004).  Further, "a document that may appear on its face to be free from ambiguity, may be deemed latently ambiguous," Energy Dev. Corp. v. Moss, 591 S.E.2d 135, 143 (W. Va. 2003), if "some collateral matter [] makes the meaning uncertain."  Flanagan, 607 S.E.2d at 769 n.4.  "[A] contract that is silent as to a point is not ambiguous in that regard," but creates a legal question as to "the effect of the contract rather than interpreting its language." Holsinger, 742 S.E.2d at 102.

The Participation Agreement and the Amendment unambiguously entitle Decker Energy, not the Deckers, to overriding royalty interests in Initial Leases that Decker Energy held more than an 85% working interest in.  ECF No. 143-3 at 10.  The agreements also provide that "Decker [Energy] shall be entitled to assign the Initial Lease ORRI or cause the Initial Lease ORRI to be paid to [the Deckers]," id. at 23, expressly stating that the Deckers would not directly hold these royalty interests.  Further, the Amendment added a provision requiring overriding royalty interests in the Target Leases to be transferred directly to the Deckers, while not doing the same for the Initial Leases, id. at 4, further indicating that the parties did not intend for the Deckers to directly hold royalty interests in the Initial Leases unless Decker Energy assigned them.  Thus, the Deckers were not contractually entitled to overriding royalty interests in the Initial Leases.

The Deckers argue that the parties' course of performance modified the terms of the Participation Agreement and the Amendment such that Decker Energy's royalty interests in the Initial Leases belonged to the Deckers. However, this Court finds the language of those agreements to be unambiguous, and this Court will not construe their plain language based on the parties' subsequent course of conduct. New, 753 S.E.2d at 72. Further, as discussed below, the parties' course of performance does not indicate Decker Energy intended or attempted to assign its royalty interests to the Deckers.

      b. <u>Implied Assignment</u>

The Deckers argue that Decker Energy assigned its overriding royalty interests in the Initial Leases to them. The Deckers concede that no written assignment exists. ECF No. 153 at 11. Instead, the Deckers argue that an assignment can be implied based on a Division of Interest Notice issued by Statoil, a check and statement of interests issued by Statoil to the Deckers for royalty payments, and copies of the Deckers' 2013 and 2014 Internal Revenue Service Form 1099-MISC stating their income from royalties.

The Division of Interest Notice sets out the parties' interests in Ball Unit 1H, listing Decker Energy's working interest and the Deckers' "ORRI" of about 1.1%. ECF No. 153-6. Statoil's checks to the Deckers also include a statement breaking down the source of the payment and indicating a total overriding royalty

interest of about 1.1%. ECF No. 153-13. The Deckers' 1099s state the amount of royalties they received in 2013 and 2014. ECF No. 153-17.

As a matter of accounting, Statoil sensibly listed Decker Energy's overriding royalty interests in the Deckers' names, as payments were made directly to them. The 1099 forms do not indicate the Deckers' ownership of the royalty interests, as the assigned payments were potentially taxable income the Deckers were obligated to report. At most, these documents tend to show that Decker Energy intended to informally exercise its right to have payments made directly to the Deckers. Had Decker Energy intended to assign its royalty interests, it would have done so through a recorded, written instrument. Accordingly, this Court finds that Decker Energy did not assign to the Deckers its overriding royalty interest in the Welch Lease or any of the Initial Leases.

Further, even if Decker Energy implicitly assigned its royalty interests, the assignment would be invalid. West Virginia's statute of frauds requires conveyances of any interest in real property to be reduced to writing. W. Va. Code § 36-1-3; Kennedy v. Burns, 101 S.E. 156, 159 (W. Va. 1919). Such transfers must also be recorded. See W. Va. Code §§ 40-1-8, 40-1-9. Decker Energy never executed or recorded a written assignment of its royalty interests to the Deckers. Thus, any implied assignment is invalid and unenforceable.

c.  Equitable Estoppel

The Deckers alternatively argue that Statoil should be equitably estopped from denying that the Deckers hold royalty interests in the Initial Leases and the Ball Unit. Under West Virginia law, equitable estoppel applies only where: (1) the party to be estopped made "a false representation or . . . conceal[ed] . . . material facts"; (2) the party to be estopped did so "with knowledge, actual or constructive[,] of the facts"; (3) that "the party to whom it was made . . . [lacked] knowledge or the means of knowledge of the real facts"; (4) that the party to be estopped intended that the representation "be acted on"; and (5) that "the party to whom it was made . . . relied on or acted on it to his prejudice." Folio v. City of Clarksburg, 655 S.E.2d 143, 148 (W. Va. 2007).

The Deckers fail to demonstrate that they lacked knowledge or the means to obtain knowledge of the fact that Decker Energy did not assign its royalty interests in the Initial Leases to them. As discussed above, the Participation Agreement clearly provides that Decker Energy could assign its royalty interests in the Initial Leases or cause them to be paid to the Deckers. No assignment was ever executed and, while the Deckers assert an implied assignment, they offer no reason for why they were unable to determine that Decker Energy had not formally assigned its royalty interests to them. As Decker Energy's sole member, Dean Decker was in the best

position to know whether Decker Energy assigned any of its interests to the Deckers and he likely had an opportunity to affect such an assignment. <u>See</u> ECF No. 146-1 at 59.

Further, Statoil did not make any representations to the Deckers regarding whether Decker Energy assigned any of its interests to the Deckers. Even if Statoil's payments to the Deckers constitute such representations, the Deckers could not reasonably rely on those representations because Statoil did not have authority to assign Decker Energy's property interests. Only Decker Energy and its sole member, Dean Decker, were in a position to transfer Decker Energy's property interests to the Deckers. Thus, Statoil is not equitably estopped from denying the Deckers' claims.

This Court finds that the Deckers were not contractually entitled to royalty interests in the Initial Leases or the Ball Unit. This Court further finds that Decker Energy did not assign its royalty interests to the Deckers. Thus, Statoil is entitled to judgment as a matter of law as to Counts One and Three.

2. <u>Unjust Enrichment</u>

The Deckers seek damages for unjust enrichment, alleging they provided "work, labor, expense[,] and investment" in the Participation Agreement and the Amendment, benefitting Statoil without compensation to the Deckers for their efforts. However,

because the parties' rights and obligations are defined by contracts, the Deckers' claim must be dismissed.

Unjust enrichment is a quasi-contract claim, and under West Virginia law "[a]n express contract and an implied contract, relating to the same subject matter, [cannot] co-exist." Case v. Shepherd, 84 S.E.2d 140, 144 (W. Va. 1954). While the Deckers themselves are not parties to the Participation Agreement or the Amendment, they allege they enriched Statoil by expending time, money, and labor on behalf of Decker Energy in furtherance of the Participation Agreement and the Amendment. Their claims are, thus, governed by contracts. The parties' rights and obligations are entirely defined by those agreements and the Deckers cannot state a claim for unjust enrichment.

## IV. Conclusion

The Deckers fail to demonstrate a genuine dispute as to any material fact. This Court finds that the Deckers have no right to overriding royalty interests in the Initial Leases or the Ball Unit and that Statoil is entitled to judgment as a matter of law as to Counts One, Three, and Four. Accordingly, Statoil's motion for partial summary judgment (ECF No. 146) is GRANTED IN PART and DEFERRED IN PART, Statoil's supplemental motion for partial summary judgment (ECF No. 204) is GRANTED, the Decker's motion for partial summary judgment (ECF No. 143) is DEFERRED, and EQT's motion for partial summary judgment (ECF No. 148) is DEFERRED. Additionally,

because the pending motions in limine (ECF Nos. 160, 162, 164, 167, 170, 172, 174) and the Deckers' pending motion to strike (ECF No. 184) all potentially affect determinations as to Count Two, those motions are also DEFERRED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    June 7, 2017


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE